UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KENYAL SCOTT,

    Petitioner,

v.                                             Case No.: 8:11-CV-764-T-27MAP

SECRETARY, DEPARTMENT
OF CORRECTIONS,

    Respondent.
_____/

## ORDER

Petitioner, a state of Florida inmate proceeding *pro se*, initiated this action by filing a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Dkt. 1). Petitioner challenges his convictions for aggravated battery (great bodily harm with a weapon) and obstructing or opposing an officer without violence, entered in 2003 in the Thirteenth Judicial Circuit, Hillsborough County, Florida. In its response (Dkt.8), Respondent asserts that the petition should be denied. Upon review, the petition must be denied.

## PROCEDURAL HISTORY

On March 27, 2003, the State of Florida filed a felony information charging Petitioner with "aggravated battery (great bodily harm and weapon)" (count one). (Dkt. 10, Ex. 1.) The information specifically charged that in committing the aggravated battery, Petitioner "did intentionally or knowingly cause great bodily harm, permanent disability or permanent disfigurement" to the victim contrary to § 784.045, Fla. Stat. (Id.) The information also charged that "during the course of the commission of the offense [Petitioner] carried, displayed, used, threatened to use, or attempted to

use a weapon, to-wit: a knife" and referred to § 775.087(1), Fla. Stat., which permits reclassification of certain offenses if a defendant uses a weapon in such a manner. (Id.) Petitioner was also charged with obstructing or opposing an officer without violence (count two). (Id.)

A jury convicted Petitioner on August 18, 2003. He was sentenced on September 22, 2003, to life imprisonment as a habitual felony offender with a thirty-year term as a prison releasee reoffender on count one, and to time served on count two. (Dkt. 10, Ex. 3.) On September 29, 2003, the trial court resentenced Petitioner to thirty years' imprisonment as a prison releasee reoffender on count one. (Dkt. 10, Ex. 4.)

On May 21, 2004, Petitioner filed a Motion to Correct Sentencing Error under Florida Rule of Criminal Procedure 3.800(b)(2). He alleged in relevant part that the trial court was without jurisdiction to conduct resentencing on September 29, 2003, because he filed a notice of appeal prior to that date, and that the court erred in resentencing him without counsel. (Dkt. 10, Ex. 5.) In an order entered August 11, 2004, the trial court granted Petitioner's Rule 3.800(b)(2) motion as to these claims. (Dkt. 10, Ex. 6.) It appears that an amended sentence was entered on September 20, 2004, reflecting Petitioner's sentence of thirty years' imprisonment as a prison releasee reoffender on count one. (Dkt. 10, Ex. 7, pp. 6-7.) The state appellate court *per curiam* affirmed Petitioner's judgment and sentence on August 3, 2005. *Scott v. State*, 908 So.2d 1072 (Fla. 2d DCA 2005) (table).

Petitioner filed a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850 on May 4, 2006, raising ten claims of ineffective assistance of trial counsel.[1] (Dkt. 10, Ex. 9.)

---

[1] According to the Response, Petitioner initially filed a Rule 3.850 motion on February 15, 2006, but the state court granted Petitioner's request to dismiss that motion in an order entered April 21, 2006. (Dkt. 8, p. 5.)

Petitioner also filed a motion to correct illegal sentence under Florida Rule of Criminal Procedure 3.800(a) on November 28, 2006.[2] (Dkt. 10, Ex. 11.) The state court denied this motion in an order entered January 19, 2007. (Dkt. 10, Ex. 13.) The state appellate court *per curiam* affirmed that order on May 30, 2007. *Scott v. State*, 957 So. 2d 1176 (Fla. 2d DCA 2007) (table). The mandate issued on June 21, 2007. (Dkt. 10, Ex. 14.)

During this time, Petitioner's Rule 3.850 motion remained pending. The state court entered several orders summarily denying some of the claims, directing Petitioner to amend other claims, and instructing the State to respond to numerous claims. (Dkt. 10, Ex. 15, 18.) On May 29, 2009, the court entered an order granting an evidentiary hearing on three of Petitioner's claims. (Dkt. 10, Ex. 19.) The court conducted the evidentiary hearing on October 6, 2009, and entered its final order denying Petitioner's Rule 3.850 motion on December 17, 2009. (Dkt. 10, Ex. 20, 21.) This order of denial was *per curiam* affirmed on November 19, 2010. *Scott v. State*, 49 So.3d 249 (Fla. 2d DCA 2010) (table). The mandate issued on December 15, 2010. (Dkt. 10, Ex. 22.)

## STANDARD OF REVIEW

1. **AEDPA**

This petition is subject to the provisions of the Antiterrorism and Effective Death Penalty Act ("AEDPA") effective April 24, 1996. *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). Habeas relief can only be granted if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Section 2254(d) sets forth a highly deferential standard for federal court review of a state court's findings of law and fact. It provides that habeas

---

[2]Petitioner also filed an "amended" motion to correct illegal sentence under Rule 3.800(a) on January 4, 2007. This motion contained the same claims as the motion filed on November 28, 2006. (Dkt. 10, Ex. 12.)

relief may not be granted on a claim adjudicated on the merits in state court unless such determination:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

The Supreme Court explained the review of a state court's findings referenced in subsection (1) above in *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000):

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

A state court's factual findings must also be given deference, as set forth in subsection (2) above. Specifically, a state court's determinations of fact "shall be presumed to be correct," and the habeas petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Henderson v. Campbell*, 353 F.3d 880, 890-91 (11th Cir. 2003).

**2.      Exhaustion, Procedural Default, and Federal Question**

In order to pursue federal habeas relief, a state prisoner must exhaust every available state court remedy for challenging his conviction. 28 U.S.C. § 2254(b)(1). "[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal

court in a habeas petition." *O'Sullivan v. Boerckel,* 526 U.S. 838, 842 (1999). A federal habeas petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State ... if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c); *Pruitt v. Jones,* 348 F.3d 1355, 1358 (11th Cir. 2003).

To exhaust state remedies, a petitioner must make the state court aware of both the legal and factual bases for his claim. "To present a federal constitutional claim properly in state court, 'the petitioner must make the state court aware that the claims asserted present federal constitutional issues.'" *Zeigler v. Crosby,* 345 F.3d 1300, 1307 (11th Cir. 2003) (quoting *Snowden v. Singletary,* 135 F.3d 732, 735 (11th Cir. 1998)). "[T]he prohibition against raising nonexhausted claims in federal court extends not only to broad legal theories of relief, but also to the specific assertions of fact that might support relief." *Kelley v. Sec'y for Dep't of Corr.,* 377 F.3d 1317, 1344 (11th Cir. 2004).

The doctrine of procedural default provides that "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is applicable." *Smith v. Jones,* 256 F.3d 1135, 1138 (11th Cir. 2001). *See also O'Sullivan,* 526 U.S. at 848; *Bailey v. Nagle,* 172 F.3d 1299, 1302-03 (11th Cir. 1999).

Similarly, a federal habeas petition must involve a question of federal law. A state court's interpretation of state laws or rules, when no federal constitutional issue is addressed, does not provide a basis for federal habeas relief. Therefore, a claim that solely involves state law is not cognizable in a § 2254 petition. *See Branan v. Booth,* 861 F.2d 1507, 1508 (11th Cir. 1988) (citing *Carrizales v. Wainwright,* 699 F.2d 1053, 1054-55 (11th Cir. 1983)).

3.  **Ineffective Assistance of Counsel**

Claims of ineffective assistance of counsel are reviewed under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To obtain relief under *Strickland*, a petitioner must show that counsel's performance was deficient and that this deficiency prejudiced the petitioner. *Id.* at 687. In order to show deficient performance, a petitioner must demonstrate that "in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Id.* at 690. To demonstrate prejudice, a petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Counsel is presumed to have provided effective assistance. *Id.* at 690. Further, "a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* If a reviewing court can dispose of a claim of ineffective assistance of counsel on one prong of the *Strickland* test, the court need not consider the other prong. *Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998).

## DISCUSSION

Respondent acknowledges that this petition is timely and that Petitioner has exhausted his claims in state court. Petitioner raises six claims in his petition.

**Ground One: "Ineffective assistance of counsel for prejudicing the prospective jury panel against Defendant and causing Defendant to testify."**

Petitioner alleges that trial counsel provided ineffective assistance because he prejudiced the

jury panel against Petitioner and required Petitioner to testify at trial. He contends that counsel told the jury panel Petitioner was guilty and informed them of his seven prior felony convictions, which led the jury panel to view him in an unfavorable light. Petitioner further states that he believed he had no choice but to testify after counsel made these statements. He contends that, absent counsel's ineffective assistance, the outcome of trial would have been different. Petitioner raised this claim in Ground One of his Rule 3.850 motion.

The state court summarily denied the first aspect of this claim, that counsel was ineffective for telling the jury panel that Petitioner was guilty, in an order filed September 10, 2008. The court found that the record refuted Petitioner's claim:

> Counsel did not state that Defendant was "not innocent"; rather, counsel was explaining the difference between finding a defendant "not guilty" as opposed to "not innocent." (Court's record citation omitted.) Accordingly, Defendant is not entitled to relief on this portion of ground one.

(Dkt. 10, Ex. 15, p. 4.) The record reflects that counsel did not concede Petitioner's guilt in front of the jury panel. Rather, in discussing the presumption of innocence and the State's burden of proof, counsel said that if the State did not meet its burden, the jury would find Petitioner to be not guilty, but would not find him to be innocent. (Dkt. 10, Ex. 2, pp. 24-26.) Counsel did not make any other comments during voir dire suggesting that Petitioner was guilty. Because counsel did not concede Petitioner's guilt before the jury, Petitioner has not shown how counsel can be deemed ineffective for the reasons raised in this portion of Ground One. Therefore, he has not shown that the state court's finding on this part of his claim was contrary to or an unreasonable application of federal law. Petitioner is not entitled to relief on this portion of his claim.

The state court conducted an evidentiary hearing on the remaining part of Petitioner's

allegation, that counsel was ineffective for informing the jury of Petitioner's seven prior felony convictions and compelling Petitioner to testify at trial. After hearing testimony from trial counsel and Petitioner, the court denied this portion of the claim.

This case involved a stabbing outside of a club in Tampa, Florida, at approximately 2:30 a.m. on March 5, 2003. The victim, Devon Williams, was a security guard at the club. Petitioner was inside the club that night with two friends. After one of the individuals was ejected, an argument took place between several security guards and the Petitioner and his friends. During this altercation, the victim sprayed tear gas, also referred to as pepper spray, into the group. Petitioner was holding a knife in his hand when he came into contact with the victim, who was cut on the abdomen and wrist.

Petitioner testified at trial that he did not intend to commit battery and that the stabbing was accidental. (Dkt. 10, Ex. 2, pp. 96-97, 102.) Counsel testified at the postconviction evidentiary hearing that the defense was one of "lack of scienter or lack of mens rea." (Dkt. 10, Ex. 20, p. 10.) More specifically, counsel testified that Petitioner indicated that:

> [Petitioner] was blinded and burned by the pepper spray and he was just flailing his arms or doing whatever he had to do because of the burn, but never once intended to strike anybody with [the knife], and I actually wrote down the quote that he gave me, "The dude ran into the knife," that he had [] displayed only.

(Id.) Counsel further testified that Petitioner intended to testify in support of this defense:

> [Petitioner] would be the very best and only witness able to testify to that. His – the friends with whom he was at the club didn't actually see the actual striking of the knife with the body of the victim and as far as intent, he would be his very best witness and he did want to testify.

(Id., p. 12.) Counsel stated that he discussed this with Petitioner before selecting a jury, and that Petitioner decided to testify. (Id., pp. 26-27.) As to the decision to inform the prospective jurors of

Petitioner's prior convictions, counsel testified that:

> I knew [Petitioner] was going to testify and I was acutely interested in biases about the seven impeachable crimes ... I knew that a jury would really not think highly of that. So I wanted to voir dire to make sure that the jurors that were on our jury were not going to use it as propensity to commit crime evidence and bad character evidence, but understand why it is that in Florida we allow jurors to know someone's prior record.

(Id., p. 23.) Counsel reiterated that he had no doubt Petitioner wanted to testify at trial, and that he never would have informed the jury panel of Petitioner's prior felony convictions unless he was sure that Petitioner was going to testify. (Id., pp. 22-24, 27.)

Petitioner testified at the evidentiary hearing that he told counsel he was unsure whether he wanted to testify at trial because he did not want to incriminate himself. (Id., p. 48.) Petitioner further testified that he intended to wait until the State had presented its case before deciding whether to testify, but that after counsel informed the jury panel of his prior convictions, he believed that he had to testify. (Id., p. 51.)

The state court found counsel's evidentiary hearing testimony credible.[3] The court further found that counsel was not ineffective:

> [T]he Court finds that from the beginning of the case, it was always Defendant's intention to testify at trial. [Counsel]'s attempt to weed out potential biased jurors by mentioning Defendant's prior felony convictions was sound trial strategy. Thus, counsel's performance was not deficient. Accordingly, Defendant is not entitled to any relief on ground one.

(Dkt. 10, Ex. 21, pp. 5-6.) Petitioner planned to testify at trial, when the prosecutor would be able to ask him the number of his prior felony convictions for purposes of impeaching his credibility. *See* § 90.610, Fla. Stat. Given that this information would have come before the jury, the state court

---

[3]"It is the duty of the trial court to determine what weight should be given to conflicting testimony." *Alston v. State*, 894 So.2d 46, 54 (Fla. 2004) (quoting *Mason v. State*, 597 So.2d 776, 779 (Fla. 1992)).

found that counsel utilized sound trial strategy in attempting to identify potential jurors who might hold Petitioner's prior felony convictions against him. Petitioners must overcome a significant burden to succeed in attacking counsel's strategic choices. When reviewing a claim of ineffective assistance of counsel, courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). Additionally, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland*, 466 U.S. at 690-91.

Petitioner has not shown that the state court's finding was contrary to or unreasonably applied established federal law or was based on an unreasonable determination of the facts in light of the evidence presented. Consequently, he is not entitled to relief on Ground One.

**Ground Two: "Ineffective assistance of counsel, failure to interview or investigate state witness and take deposition of the victim Devon Williams."**

Petitioner argues that counsel was ineffective for failing to take the deposition of the victim, Devon Williams. Petitioner alleges that when he asked counsel about this, he responded that a deposition was unnecessary because the police reports provided extensively detailed accounts of the investigation. Petitioner argues that, had counsel investigated further, he would have realized that Williams sought medical treatment at a hospital three or four hours after the incident and received stitches in his forearm and abdomen. Petitioner asserts that this information was not included in the

police reports. Petitioner alleges that the outcome of trial would have been different if not for counsel's ineffective assistance. Specifically, he contends that the jury would not have found that the victim suffered great bodily harm if counsel uncovered and presented information about Williams's further medical treatment, as well as his hospital medical records, and prepared a defense based on this information.[4]

If the jury did not find that Petitioner caused great bodily harm to the victim, Petitioner would have been subject to less severe punishment. In Florida, aggravated battery is a second degree felony. § 784.045(2), Fla. Stat. As relevant to this case, aggravated battery may be committed in one of two ways:

> (1)(a) A person commits aggravated battery who, in committing battery,
>
> 1. Intentionally or knowingly causes great bodily harm, permanent disability, or permanent disfigurement; or
>
> 2. Uses a deadly weapon.

§ 784.045(1)(a)1.-2., Fla. Stat.

A second degree felony may be reclassified as first degree felony if an individual "carries, displays, uses, threatens to use, or attempts to use any weapon or firearm" in the commission of the offense, provided that the use of a weapon or firearm is not an element of the offense itself. § 775.087(1)(b), Fla. Stat. Therefore, if aggravated battery is proven on the theory that a petitioner

---

[4] In support of his argument that the jury would have found that the victim did not suffer great bodily harm if more information about the victim's injuries was presented, Petitioner also refers to the jury's question during deliberations concerning permanent disfigurement. The jury was instructed that, to prove Petitioner was guilty of aggravated battery (great bodily harm), the State must have shown "that Mr. Scott in committing that battery intentionally or knowingly caused great bodily harm or permanent disfigurement to Mr. Williams." (Dkt. 10, Ex. 2, p. 133.) After the jury began deliberations, they submitted a written question asking, "What is the definition of 'disfigurement'?" (Id., p. 141.) Without objection from counsel, the trial judge told the jury that there was no definition of "disfigurement" and that it was "up to" jury. (Id., pp. 141-42.)

caused great bodily harm under § 784.045(1)(a)1., it may be reclassified as a first degree felony in accordance with § 775.087(1)(b) if the petitioner used a weapon in the commission of the offense. However, if aggravated battery is proven on the theory of use of a deadly weapon under § 784.045(1)(a)2., it may not be reclassified as a first degree felony under § 775.087(1)(b) because the use of a weapon becomes an element of the offense. *See Lareau v. State*, 573 So.2d 813, 815 (Fla. 1991). Here, the jury found Petitioner guilty of aggravated battery (great bodily harm with a weapon). Therefore, this offense was reclassified as a first degree felony. But if it had not been shown that Petitioner caused great bodily harm, the offense could not have been reclassified.

Relevant to Petitioner's claim is the trial testimony of victim Devon Williams. He testified that he was present during the argument outside the club. (Dkt. 10, Ex. 2, p. 56.) He sprayed pepper spray in an attempt to separate the individuals who were arguing. (Id., p. 57.) Williams testified that Petitioner then approached him from behind and swung at him, after which he again discharged the pepper spray. (Id.) Initially, Williams did not realize that Petitioner had a knife but saw it in Petitioner's hand when he backed away. (Id., pp. 57, 62.) Williams testified that Petitioner struck him in the wrist and abdomen. (Id., p. 58.) Williams also testified that paramedics looked at him that night and told him that he could go to the hospital with them or on his own. (Id., p. 60.) Williams decided to go by himself. (Id.) He received four stitches in his wrist and two or three stitches in his abdomen. (Id., p. 62.) Williams testified that he had scars on his wrist and abdomen as a result of his injuries and showed the jury his scars. (Id., pp. 58, 60-61.)

Petitioner's allegation of ineffective assistance of counsel was raised in Ground Two of his Rule 3.850 motion, which was summarily denied. The trial court found that Petitioner was unable to show that he was prejudiced by counsel's performance because information about the victim's

injuries was presented to the jury:

> The State argues that the victim's injuries were apparent and shown to the jury. The State argues that the victim testified he had been stabbed in the wrist and the abdomen, that he had received four stitches in [his] wrist and two or three in his abdomen, and that the stabbings left a two inch scar on his wrist and another scar on his abdomen. The State argues that because evidence of the victim's injuries was shown directly to the jury and another witness testified as to the manner in which the victim received the injuries, Defendant has failed to demonstrate prejudice that would have changed the outcome of trial. The Court finds the State's argument persuasive.

(Dkt. 10, Ex. 19, p. 3.)[5] Whether or not counsel obtained further information about the victim's injuries prior to trial would not have changed the victim's testimony describing his own wounds. Petitioner does not specify what further defense or argument counsel should have raised, nor does he explain how obtaining more information about the victim's wounds would have enabled counsel to argue that they did not amount to great bodily harm. To the contrary, that the victim sought further medical attention at a hospital speaks to the serious nature of his injuries. Petitioner has not demonstrated that counsel was ineffective and thus has not shown that the trial court's finding was an unreasonable application of or contrary to established federal law. Petitioner is not entitled to relief on Ground Two.

**Ground Three: "Ineffective assistance of counsel for failure to investigate and discover evidence in defendant [sic] one line of defense to be consider [sic] by jury in support of counsel [sic] argument."**

Petitioner argues that counsel should have investigated his sole "line of defense," that the victim's injuries did not amount to great bodily harm. This argument was raised in Ground Four of Petitioner's Rule 3.850 motion. In summarily denying this claim, the state court found it was the same argument as that brought in Ground Two of his Rule 3.850 motion:

---

[5] The state court's order also references the trial testimony of eyewitness Alphonso Morgan, who testified that he was no more than five feet away when he saw Petitioner "lunge[] at" the victim. (Dkt. 10, Ex. 2, pp. 70, 73.)

>However, the court notes this allegation is the same allegation made in ground two above–only here Defendant has couched his claim in terms of failure to investigate a line of defense rather than failure to investigate the victim's injuries. Irrespective of the wording, Defendant's claim remains that counsel failed to investigate the extent of the victim's injuries and that failure left Defendant subject to the weapon enhancement of section 775.087(1), Florida Statutes. Because the Court ordered the State to respond to this allegation in ground two, ground four is denied.

(Dkt. 10, Ex. 15, pp. 5-6.)

Recognizing that Petitioner's allegations in Grounds Two and Four of his Rule 3.850 motion encompassed the same argument, the trial court reviewed the claim as presented in Ground Two of the Rule 3.850 motion, which it went on to consider and deny on the merits. For the same reasons described in the discussion of Ground Two of his habeas petition, Petitioner has not shown that the state court's resolution of that ground was contrary to or an unreasonable application of established federal law. Accordingly, Petitioner has not demonstrated that he is entitled to relief on Ground Three of his habeas petition.

**Ground Four: "Ineffective assistance of counsel, for failure to interview and investigate paramedics workers and present medical run reports as evidence."**

Petitioner argues that counsel should have interviewed and investigated the paramedics who treated the victim and obtained "EMS run reports" as well as the report of the doctor who saw him. He further contends that counsel should have called the responding paramedics to testify at trial. Petitioner states that this information was relevant to the degree and severity of the victim's injuries and that if the jury heard it, they would have found that the victim did not suffer great bodily harm.[6]

---

[6] Petitioner further appears to argue that additional investigation by counsel would have indicated that the victim's wrist not was injured until after the events at the club. He states that the victim's wrist injury would have been visible to the officer who wrote the police report, but that it was not addressed in the report. Similarly, Petitioner alleges that the victim's wrist injury would have been visible to eyewitness Alphonso Morgan, but that he did not mention it in his trial testimony. In Ground Eight of his Rule 3.850 motion, Petitioner alleged that counsel was ineffective for failing to obtain medical records and call paramedics as witnesses. But he did not argue that such investigation would have shown that the victim did not receive his wrist injury until a later time. (See Dkt. 10, Ex.

This claim was raised in Ground Eight of Petitioner's Rule 3.850 motion. The state court found that "[t]o the extent that Defendant realleges ineffective assistance of counsel for failure to investigate the victim's injuries, ground eight is denied as this issue is addressed in ground two above." (Dkt. 10, Ex. 15, p. 8.) As addressed in Grounds Two and Three of Petitioner's habeas petition, Petitioner has not shown that the state court's denial of his claim of ineffective assistance of counsel for failing to investigate the victim's injuries was contrary to or an unreasonable application of established federal law. Petitioner is not entitled to relief on this part of Ground Four of his habeas petition.

The state court went on to consider this ground of Petitioner's Rule 3.850 motion inasmuch as he raised a distinct claim of ineffective assistance of counsel for failing to call paramedics as witnesses. After Petitioner amended this portion of his claim, the court summarily denied it:

> The State argues that the victim's injuries were apparent and shown to the jury. The State argues that the victim testified that he had been stabbed in the wrist and the abdomen, that the stabbings left a two inch scar on his wrist and another scar on his abdomen, that he did not go to the hospital in an ambulance but went later by himself, that the wounds were still bleeding when he went to the hospital and stopped bleeding two or three hours later, and that he had four stitches put in his wrist and two or three stitches put in his abdomen. The State further argues that the victim was directed to step down and show the jurors his scars. The State contends that because evidence of the victim's injuries was shown to the jury, Defendant has failed to show prejudice that would have changed the outcome of trial.
> The Court finds the State's argument persuasive. As such, Defendant is not entitled to any relief on ground eight.

(Dkt. 10, Ex. 19, pp. 5-6.) The court determined that Petitioner did not suffer prejudice when

---

9.) Therefore, the claim that counsel was ineffective for failing to uncover information suggesting the victim's wrist injury occurred later cannot be considered in this habeas petition because, by failing to raise these facts in his Rule 3.850 motion, Petitioner did not fairly present the federal claim in state court. *See Footman v. Singletary*, 978 F.2d 1207, 1211 (11th Cir. 1992). Because the other supporting facts raised in this habeas petition were also raised in Ground Eight of Petitioner's Rule 3.850 motion, they are considered here.

counsel did not call the paramedics to testify regarding the victim's injuries because the victim told the jury about the extent of his injuries and showed them his scars. Even assuming that paramedics would have testified about the victim's wounds, their testimony would not have changed the victim's first-hand account of the injuries he suffered to his wrist and abdomen and the treatment he received. Based on this information, the jury found that he suffered great bodily harm. Petitioner has not shown the trial court's finding to be an unreasonable application of or contrary to established federal law. Accordingly, Petitioner is not entitled to relief on Ground Four.

**Ground Five: "Ineffective assistance of counsel for failure to interview or call potential witness(es) Tom Taylor and Odell Mount."**

Petitioner claims that counsel was ineffective for failing to interview or call potential witnesses Tom Taylor and Odell Mount, who he told counsel were with him at the club. He claims that their testimony would have shown that Petitioner did not intend to injure the victim. Specifically, Petitioner states that Taylor would have testified that the victim was pushed by the crowd and "was actually the aggressor attacking the [Petitioner] once out [of] the club." (Dkt. 1, p. 32.) Petitioner alleges that Taylor was available to testify at trial, and that the outcome of trial would have been different if the jury heard Taylor's testimony because they "could have made a reasonable decision through evidence that victim was actually pushed into [the] weapon and that no intent was caused ...." (Id., p. 33.)

Petitioner raised this argument in Ground Nine of his Rule 3.850 motion. The state court conducted an evidentiary hearing on this claim and denied it after considering the testimony of trial counsel and Petitioner. Counsel testified that Petitioner told him he was at the club with Tom Taylor and another person, but that Petitioner did not provide Odell Mount's name. (Dkt. 10, Ex. 20, pp.

15, 33-34.) Counsel additionally testified that when he met with Petitioner the day after being appointed, "the decision was made we were not going to be calling" these witnesses. (Id., p. 36.) He stated that after this meeting, Petitioner did not raise the issue of these potential witnesses again. (Id., p. 37.)

Furthermore, counsel testified that he believed Petitioner informed him that these individuals would not have had information of any value. (Id., p. 16.) While he acknowledged that his notes did not reflect this directly, counsel stated that:

> I seem to remember the way they were walking out of the club, they were walking out one at a time type of thing and single file and that he told me that - - I seem to remember that he told me that they didn't actually see the contact and the quick melee in which this person gets hit by the knife, and so that's why I have not listed them or done an invest request at this point.

(Id.)

Petitioner testified that he informed counsel there were two witnesses who could testify about the events. (Id., pp. 54-55.) He further testified that he mentioned Odell Mount by name. (Id., p. 54.) Again, the state court found counsel's testimony credible. It denied this claim:

> As to the allegations raised in ground nine, Defendant has not met his burden of proof. Defendant alleges that Tom Taylor and Odell Mount would have testified at trial that the victim was pushed onto Defendant's knife and that Defendant did not have intent to harm the victim. However, neither Mr. Taylor nor Mr. Mount appeared at the evidentiary hearing. (Court's record citation omitted.) Additionally, the Court finds credible [counsel]'s testimony that he discussed with Defendant the fact that the victims did not witness the actual melee outside the bar and that Defendant did not mention the witnesses again after their discussion. Accordingly, Defendant is not entitled to any relief on ground nine.

(Dkt. 10, Ex. 21, p. 6.)[7]

---

[7] In summarizing the relevant evidentiary hearing testimony, the state court's order also noted that counsel testified he also did not want to call Petitioner's witnesses because Petitioner had others attempt to pay the victim not to testify. (Dkt. 10, Ex. 21, p. 5.)

The state court found credible counsel's testimony that Petitioner never specifically identified Odell Mount as a potential witness prior to trial. The state court also found credible counsel's testimony that Petitioner conceded to counsel that Tom Taylor did not witness the actual stabbing and that Petitioner made no further mention of Taylor. Based on this information, counsel had no reason to believe that Taylor could provide testimony helpful to the defense. There is no indication that Petitioner provided counsel with additional information concerning Taylor that would have changed counsel's beliefs or led counsel to investigate Taylor further. Additionally, Taylor and Mount did not testify at the evidentiary hearing concerning what their trial testimony would have been. (Dkt. 10, Ex. 20.) Petitioner has not provided any other evidence identifying what testimony they could have provided. *See United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991) ("[E]vidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or on affidavit. A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim.") (footnotes omitted).

Petitioner has not shown that the state court's finding was contrary to or an unreasonable application of established federal law or was based on an unreasonable determination of the facts. Accordingly, he is not entitled to relief on Ground Five.

**Ground Six: "Trial court wrongfully enhanced Defendant [sic] offense under Florida Statute sec. 775.087(1) whereas weapon was essential element of offense."**

Petitioner alleges that the trial court's reclassification of aggravated battery from a second degree felony to a first degree felony based on his use of a weapon during the offense was improper. As discussed in Ground Two, the second degree felony of aggravated battery may be reclassified as

a first degree felony under § 775.087(1)(b), Fla. Stat., if the aggravated battery was committed by causing great bodily harm to the victim and a weapon was used in the commission of the offense. But reclassification is improper if the aggravated battery was committed by using a deadly weapon because the use of a weapon becomes an element of the offense.

Petitioner argues that aggravated battery could not have been reclassified under § 775.087(1)(b), Fla. Stat., in his case because use of a weapon was an element of the crime. He presents this issue solely as a matter of state law, contending that the state court erred in applying this specific statutory provision to his case.[8] Because it is raised only as a matter of state law, Petitioner's claim is not cognizable in his federal habeas petition. *See Branan*, 861 F.2d at 1508. Therefore, this claim provides no relief.

Accordingly, it is **ORDERED** that Petitioner's Petition for Writ of Habeas Corpus (Dkt. 1) is **DENIED**. The Clerk is directed to enter judgment against Petitioner and close this case.

It is further ordered that Petitioner is not entitled to a certificate of appealability. A petitioner does not have absolute entitlement to appeal a district court's denial of his habeas petition. 28 U.S.C. § 2253(c)(1). A district court must first issue a certificate of appealability (COA). *Id.* "A [COA] may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2). To make such a showing, Petitioner "must demonstrate

---

[8]While Petitioner argued in his motion to correct illegal sentence under Rule 3.800(a) that the reclassification of this offense violated his Sixth Amendment rights, he makes no such claim in his habeas petition. It is also noted that the state court denied his Rule 3.800(a) claim that count one was improperly reclassified as a first degree felony. (Dkt. 10, Ex. 13.) The order of denial was affirmed on appeal. *See Scott*, 957 So.2d 1176. This claim has previously been considered and rejected. Furthermore, even if Petitioner's claim was cognizable in his petition, it would not provide relief. The jury was instructed that if they found Petitioner committed aggravated battery (great bodily harm) and <u>also</u> found that in the course of committing that offense, he used a weapon, then they should find him guilty of aggravated battery (great bodily harm with a weapon). (Dkt. 10, Ex. 2, p. 134.) In accordance with this instruction, the jury would have had to convict Petitioner of aggravated battery on the theory of causing great bodily harm, and further find that he used a weapon in the commission of the aggravated battery. Reclassification under § 775.087(1)(b), Fla. Stat., was permissible under these circumstances.

that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Petitioner has not made this showing. Because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis*.

**DONE AND ORDERED** in Tampa, Florida, on May 19th, 2014.

JAMES D. WHITTEMORE
United States District Judge

SA:mcl
Copy furnished to:
*Pro se* Plaintiff
Counsel of Record